IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**JOHN SCOTT CASTO, II,**

      **Plaintiff,**

  **v.**                                   **Civil Action No. 3:16-cv-05848**

**BRANCH BANKING AND
TRUST COMPANY,**

      **Defendant.**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Branch Banking and Trust Company ("BB&T"), by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Memorandum in Support of its Motion for Summary Judgment against the Complaint filed by Plaintiff John Scott Casto, II ("Plaintiff"). For the reasons set forth below, BB&T's Motion should be granted because there are no genuine disputes of material fact, and, thus, BB&T is entitled to judgment as a matter of law.

## I.     INTRODUCTION

All claims in this case rest on a single factual premise: Did BB&T call Plaintiff after Plaintiff effectively communicated a cease and desist demand?  The facts show that BB&T immediately ceased making calls when it received the cease and desist letter, and hence Plaintiff has no claim.

On December 21, 2015, Plaintiff mailed a letter dated December 5, 2015, to BB&T's registered agent demanding that BB&T cease contacts with him concerning his debts with BB&T.  Plaintiff alleges that on December 22, 2015, BB&T began calling Plaintiff multiple times a day in disregard of the cease and desist letter.  Complaint ¶ 12.  Based on this common factual allegation, Plaintiff brings six counts under federal and state law, including:

- o   Count I: Violations of the Telephone Consumer Protection Act ("TCPA");

- o   Count II: Violations of the West Virginia Consumer Credit Protection Act ("WVCCPA");

- o   Count III: Violations of the West Virginia Computer Crime and Abuse Act ("WVCCAA");

- o   Count IV: Violations of the Telephone Harassment Statute ("THS");

- o   Count V: Negligence;

- o   Count VI: Intentional Infliction of Emotional Distress ("IIED"); and

- o   Count VII: Invasion of Privacy.

*Id.* at ¶¶ 20-50.

What Plaintiff's Complaint fails to include is the fact that the cease and desist letter was received by BB&T's registered agent on January 6, 2016.  Upon receipt and processing of the letter, BB&T stopped calling the Plaintiff *the very next day*.

There is no genuine issue of material fact regarding Plaintiff's claims.  Accordingly, and as described more fully below, the Court should grant summary judgment for BB&T against all of Plaintiff's claims with prejudice.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Prior to December 5, 2015, Plaintiff became in arrears upon debts owed to BB&T. *See* Complaint ¶ 10.

2. Plaintiff mailed a letter to BB&T's registered agent postmarked December 21, 2015, and dated December 5, 2015, asking BB&T not to contact him by telephone and advising that he had retained an attorney. *See* Declaration of Bobby Taylor at ¶ 11 (attached as **Exhibit A**) (hereafter cited as "Decl."); **Exhibit 4** to Decl.

3. The letter was received by BB&T's registered agent on January 6, 2016. *See id.*

4. The letter and the cease and desist demand was recorded in BB&T's business records on the next day, January 7, 2016. *See* Decl. ¶¶ 8 and 9; **Exhibit 1** and **Exhibit 2** to Decl.

5. BB&T ceased making telephonic calls to Plaintiff upon receipt of the cease and desist letter. BB&T's last call was made on January 7, 2017 -- the day that the letter was recorded in BB&T's business records. *See* Decl. ¶ 10; **Exhibit 3** to Decl.

## III.  STANDARD OF REVIEW

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). This Court describes that "[m]aterial facts are those necessary to establish the elements of a party's cause of action." *Rawls v. Associated Materials, LLC*, No. 1:10-cv-01272, 2012 U.S. Dist. LEXIS 125744, at *6 (S.D.W. Va. Sept. 5, 2012). This Court has also held that "[a] 'genuine' dispute concerning a 'material' fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor." *Shaffer v. HSBC Bank Nev.*, No. 5:12-cv-00968, 2013 U.S. Dist. LEXIS 7001, at *7 (S.D.W. Va. Jan. 17, 2103) (internal citations omitted). Most importantly, if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case,' then summary judgment should be granted because 'a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial.'" *Biser v. Mfrs. & Traders Trust Co.*, No. 2016 U.S. Dist. LEXIS 134427, at *11 (S.D.W. Va. Sept. 29, 2016) (quoting *Celotex*, 477 U.S. at 322-23).

### III.    ARGUMENT

Each and every one of Plaintiff's claims is premised on a single factual contention:  that BB&T continued to call Plaintiff after Plaintiff made a cease and desist demand on BB&T.  This core contention is belied by the undisputed fact that notice was received by BB&T's registered agent on January 6, 2016, and that BB&T's last call to plaintiff was made the next day, January 7, 2016.  The facts show that BB&T respected the cease and desist letter.  Therefore, BB&T is entitled to judgment, as no genuine issue of material fact exists on any of Plaintiff's counts.

### A.    Plaintiff's Claim for Violations of the TCPA (Count I) Fails as a Matter of Law.

Congress enacted the TCPA in 1991 to "protect … telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment." H.R. Rep. No. 102-317, at 5 (1991).  In particular, Congress sought to quell "outrage[] [over] the proliferation of intrusive, nuisance calls to [Americans'] homes from telemarketers."  H.R. Rep. No. 102-317, at 2 (1991).  To that end, the TCPA makes it unlawful for "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

Violations of the TCPA are actionable through the statute's private right of action, which provides for "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater …." 47 U.S.C. § 227(b)(3)(B).  While courts have the power to interpret the statute and regulations, the Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

The TCPA prohibits the use of an automatic telephone dialing system[1] ("ATDS") or prerecorded voice to call a cellular telephone without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii).  There is no allegation that BB&T did not have prior express consent to call Plaintiff; rather, Plaintiff asserts that BB&T placed calls to him with an ATDS after he revoked his consent. Compl. ¶¶ 17 and 22.

"Although the Fourth Circuit Court of Appeals has not addressed revocation of consent under the TCPA, the Third and Eleventh Circuit Courts of Appeals have aligned themselves with previous rulings of the [Federal Communications Commission] ["FCC"] in holding that consent is revocable under the TCPA." *Cartrette v. Time Warner Cable, Inc.*, No. 5:14-CV-143-FL, 157 F. Supp. 3d 448, 453 (E.D.N.C. Jan. 14, 2016) (citing *Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265, 270 (3d Cir. 2013); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014)).  Specifically, the FCC has also held that consumers may revoke consent through any reasonable means.  *In re: Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, ¶ 55 (July 10, 2015) ("2015 Ruling").

While the FCC allows oral or written revocation of consent under the TCPA, *see* 2015 Ruling at ¶ 64, revocation can only become effective *after receipt*.  Specifically, the FCC in its 2015 Ruling discusses the Second Restatement of Torts which states that "consent is terminated *when the actor knows or has reason to know* that the other is no longer willing for him to continue the particular conduct." 2015 Ruling, fn. 247 (citing Restatement (Second) of Torts § 892A, cmt. i. (1979) (emphases added)).  And while Plaintiff here mailed a written letter to BB&T's registered agent revoking his consent, the letter was not received by BB&T until fifteen days after the letter was sent.

---

[1] For purposes of this motion only, BB&T assumes that its telephone system is an automatic telephone dialing system and that the TCPA applies.

On December 21, 2015, as evidenced by the postmark on the envelope, Plaintiff mailed a cease and desist letter to BB&T's registered agent. *See* Ex. 4.  This cease and desist letter was received by BB&T's registered agent on January 6, 2017. *See* Ex. 4.  BB&T's business records show that the cease and desist letter was recorded in its system the very next day, on January 7, 2016.  One telephone call was placed by BB&T to Plaintiff on January 7, 2016 – the same day that the revocation was recorded.  No calls were made after January 7, 2016.  The thrust of Plaintiff's argument (not only for the TCPA but for each and every count) is that revocation was effective the day the letter was mailed – not the day that BB&T received the letter.  This argument turns the TCPA and the FCC's rulings on their head and would require a business to somehow be aware of a revocation that had not yet been communicated to it.  This is not the law.

For these reasons, Plaintiff's argument that revocation occurs prior to BB&T's receipt and knowledge of a revocation fails, and summary judgment should be granted on Count I.

**B.      Plaintiff's Claim for Violations of the WVCCPA (Count II) Fails as a Matter of Law.**

**1.      Plaintiffs Cannot Prove Any Calls Were Made Repeatedly, Continuously, or at Times Known to be Inconvenient With the Intent to Annoy, Abuse or Oppress.**

Plaintiff claims that BB&T violated West Virginia Code § 46A-2-125 because it made calls after the cease and desist.  Compl. ¶ 26.  The WVCCPA requires Plaintiff prove that BB&T's actions were unreasonable with "intent to annoy, abuse or oppress or threaten," but the undisputed facts show that BB&T did not do what Plaintiff says it did: ignore a valid cease and desist.  Plaintiff's argument is simply without merit as there are no facts demonstrating that calls were placed by BB&T after an effective cease and desist was received.

As with the TCPA, what counts under the WVCCPA is receipt of a cease and desist.  On June 12, 2015, amendments to multiple sections of the WVCCPA, including section 128(e)

became effective.   The West Virginia Legislature amended section 128 to "clarify" the "permitted and prohibited actions with regard to the prohibition on oppression and abuse in the course of debt collection."   The amended, current section 128(e) prohibits:

> Any communication with a consumer made more than seventy- two hours after the debt collector **receives** written notice, either on paper or electronically, from the consumer or his or her attorney that the consumer is represented by an attorney specifically with regard to the subject debt.

W. Va. Code § 46A-2-128(e) (2015).

In this case, BB&T did not receive the cease and desist letter until January 6, 2015, after the effective date of the WVCCPA amendments; therefore, the amendment clarifying section 128(e) applies to Plaintiff's notice of attorney representation claim.  *See* Ex. 4.  Accordingly, to state a claim for violation of section 128(e), Plaintiff must allege facts that: (1) he provided written notice to BB&T that he was represented by an attorney "specifically with regard to the subject debt"; (2) the notice clearly stated "the attorney's name, address and telephone number"; (3) the notice was sent to BB&T's West Virginia registered agent; (4) BB&T communicated with Plaintiff after he provided the statutorily defined notice; and (5) BB&T's communication was not a "[r]egular account statement."  *Id.*  Plaintiff has not only failed to sufficiently allege the required elements for a claim under section 128(e), he cannot show them.  Specifically, Plaintiff cannot show that he was contacted by BB&T after the cease and desist letter became effective.  As such, summary judgment must be granted on Count II as the evidence falls short of showing that BB&T violated the WVCCPA.

## 2. No Evidence Can Exist to Support a Claim Pursuant to W.V. Code § 46A-2-127.

Finally, Count II includes a claim that Defendant "fail[ed] to clearly disclose the name of the business entity making a demand for money upon Plaintiff's indebtedness in violation of *West Virginia Code* §46A-2-127 (a) and (c)."  Compl. ¶ 26(c).  While the Complaint alone is

plead deficiently, there is no evidence of any showing that BB&T failed to disclose its identity to Plaintiff, or otherwise provided misleading information when contacting Plaintiff.  Absent such allegations and evidence, Plaintiff has failed to articulate facts, general or specific, explaining how Defendant could be liable under Section 46A-2-127.  *See Wrenn v. Bank of Am. Home Loans, LP*, 2013 U.S. Dist. LEXIS 20162 at *11 (S.D.W. Va. Jan. 30, 2013); *and Rabel v. Huntington Nat'l Bank*, 2015 U.S. Dist. LEXIS 72144, *29-30 (S.D.W. Va. June 4, 2015).

Accordingly, no violation of the WVCCPA having occurred, Plaintiff's claims should be dismissed.

**C.     Plaintiff's Claims for Violations of the West Virginia Computer Crime and Abuse Act (Count III) and Telephone Harassment Statute (Count IV) Fail as a Matter of Law for Want of Supporting Evidence.**

Plaintiff has no evidence supporting his claims for violations of the West Virginia Computer Crime and Abuse Act ("WVCCAA") or Telephone Harassment Statute ("THS"). Again, Plaintiff hinges these claims on the premise that BB&T violated West Virginia law by making calls after the cease and desist, Compl. ¶¶ 31, 35, and since the factual premise fails, the cause of action fails.

In any event, there is no private right of action under the THS, and West Virginia's federal district courts have held that W. Va. Code § 55-7-9 cannot create a civil private right of action under § 61-8-16.  *Bailey v. Chase Bank USA, N.A.*, No. 3:10-cv-0176, 2010 U.S. Dist. LEXIS 124072, at *14–15 (S.D.W. Va. Nov. 22, 2010) (dismissing claim under W. Va. Code § 61-8-16(a) after finding a plaintiff cannot seek damages under § 55-7-9 for violation of the THS); *Parkins-White v. World's Foremost Bank*, No. 2:10-cv-137, 2010 U.S. Dist. LEXIS 31766, at *3 (S.D.W. Va. 2010) (same).  These cases are directly on point and dispositive of Plaintiff's claims.

Plaintiff's claims in Counts III and IV for alleged violations of the WVCCAA and THS are not supported by the facts, are contrary to the law, and cannot survive summary judgment.

### D. Plaintiff's Claims for Negligence (Count V) Intentional Infliction of Emotional Distress (Count VI), and Invasion of Privacy (Count VII) Fail as a Matter of Law for Want of Supporting Evidence.

Again, Plaintiff hinges his claims for negligence, intentional infliction of emotional distress, and invasion of privacy on the premise that BB&T violated West Virginia law by making calls after the cease and desist demand, Compl. ¶¶ 40, 43, 46, and since the factual premise fails, the causes of action fail.

In any event, these claims fail for other reasons. Plaintiff's negligent supervision or training claim requires, like all negligence claims, duty, breach, causation, and damages.  For negligent supervision and training "[u]nder West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." *Biser*, 2016 U.S. Dist. LEXIS 134427 at *27 (quoting *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 817-18 (S.D.W. Va. 2012) (Copenhaver, J.)).  In order to allege negligent supervision or training, Plaintiff "must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised. *Id.* (quoting *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)).  Plaintiff fails to state a negligence claim because he merely makes a conclusory statement that BB&T's employees are negligently trained, without alleging either the negligence elements as to any employee.

In order to state a valid claim for intentional infliction of emotional distress, plaintiff must show that:

(1) The defendant's actions towards the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;

(2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct;

(3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and

(4) That the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Lab. Inc.*, 202 W. Va. 369, 375 (1998).  However, "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct," and will not support a cause of action for intentional infliction of emotional distress.  *Courtney v. Courtney*, 186 W. Va. 597, 602 (1991).  Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Travis*, 202 W. Va. at 375.

In turn, an invasion of privacy occurs under West Virginia law only where a party "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Leonard v. Alcan Rolled Prods.-Ravenswood, LLC*, No. 2:09-cv-00971, 2009 U.S. Dist. LEXIS 102655, at *6–7 (S.D.W. Va. Nov. 3, 2009) (quoting *Harbolt v. Steel of W. Va., Inc.*, 635 F. Supp. 2d 465, 476 (S.D.W. Va. 2009) (citing Restatement (Second) of Torts § 652B)); *see Crump v. Beckley Newspapers*, 173 W. Va. 699, 711, 320 S.E.2d 70, 82 (W. Va. 1984) (stating that West Virginia law recognizes common law invasion of privacy where there is "an unreasonable intrusion upon the seclusion of another").

In this case, there is no evidence in support of Plaintiff's negligence, intentional infliction of emotional distress, or invasion of privacy claims because there is no allegation, much less

evidence, that the calls were of vicious quality or would be highly offensive to a reasonable person.  Accordingly, Plaintiff's common law claims for negligence, intentional infliction of emotional distress and invasion of privacy fail as a matter of law.  *See, e.g.*, *Hatfield v. Health Mng. Assocs.*, 223 W. Va. 259, 268 (2008) (affirming summary judgment on intentional infliction of emotional distress claim because defendants "did nothing that could reasonably be regarded as so extreme and outrageous" and "did nothing to ridicule, harass, or verbally abuse" defendants).

## V.    CONCLUSION

For all of the above reasons, Defendant BB&T, by counsel, respectfully requests that the Court grant its Motion for Summary Judgment and enter an Order dismissing Plaintiff's Complaint and each and every claim therein with prejudice and granting Defendant any further legal or equitable relief that the Court deems appropriate.

Dated:  April 21, 2017                               Respectfully submitted,

**BRANCH BANKING AND TRUST COMPANY**

By: /s/ D. Kyle Deak
                                    Of Counsel

D. Kyle Deak (WV Bar No. 11604)
TROUTMAN SANDERS LLP
Post Office Drawer 1389
Raleigh, North Carolina 27602
Telephone: (919) 835-4133
Facsimile: (919) 829-8725
E-mail: kyle.deak@troutmansanders.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**JOHN SCOTT CASTO, II,**

        **Plaintiff,**

    **v.**                        **Civil Action No. 3:16-cv-05848**

**BRANCH BANKING AND**
**TRUST COMPANY,**

        **Defendant.**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of April, 2017, I electronically filed the foregoing

document with the Clerk of the Court, using the CM/ECF system which shall send notification of

such filing to all counsel of record.

Daniel K. Armstrong
Benjamin Sheridan
Klein and Sheridan LC
3566 Teays Valley Road
Hurricane, WV 25526
*Counsel for Plaintiff*

    /s/ D. Kyle Deak
D. Kyle Deak (WV Bar No. 11604)
TROUTMAN SANDERS LLP
Post Office Drawer 1389
Raleigh, North Carolina 27602
Telephone: (919) 835-4133
Facsimile: (919) 829-8725
E-mail: kyle.deak@troutmansanders.com
*Counsel for Defendant*

31125983