**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JOHN SCOTT CASTO II,

               Plaintiff,

v.                              CIVIL ACTION NO.   3:16-5848

BRANCH BANKING AND
TRUST COMPANY,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 26). Defendant requests summary judgment in its favor on each of Plaintiff's seven counts. By Memorandum Opinion and Order issued July 27, 2017, this Court held that motion in abeyance so that Plaintiff could conduct additional depositions. ECF No. 35. In that Memorandum Opinion and Order, the Court also directed the parties to submit supplemental briefing after the completion of the additional depositions. The parties have since conducted those additional depositions. Having received Plaintiff's Surresponse (ECF No. 41)[1] and Defendant's Surreply (ECF No. 43), the Court believes that the Motion for Summary Judgment is ready for adjudication. As explained below, the Court **GRANTS, IN PART**, and **DENIES, IN PART**, Defendant's Motion for Summary Judgment.

---

[1] Although Plaintiff titled this pleading as "Plaintiff's Surreply in Opposition to Defendant's Motion for Summary Judgment and Motion to Vacate Scheduling Order," the Court referred to this pleading as a "surreponse" in the order requiring its filing. *See Mem. Op. and Order*, ECF No. 35, at 5. In the interest of clarity, the Court refers to Plaintiff's supplemental pleading as a "surresponse" and Defendant's supplemental pleading as a "surreply."

## I. BACKGROUND

This case arises out of Defendant's debt collection efforts against Plaintiff. Sometime before December of 2015, Plaintiff became in arrears upon debts allegedly owed to Defendant. *Def.'s Mem. in Supp. of Mot. for Summ. J.*, ECF No. 27, at 2. Defendant, through various forms of contact, sought to collect on the outstanding debt. *Ex. A to Def.'s Mot. for Summ. J.*, ECF No. 26-1, at 1-15. In the face of these collections, Plaintiff retained counsel. *Id.* at 19.[2]

By a letter dated in early to mid-December[3], Plaintiff notified Defendant that he had retained counsel (the "Notification Letter"). *Id.* This letter additionally instructed Defendant to cease calling Plaintiff, and instead to call his lawyer. *Id.* Although the Notification Letter reflects a date in early to mid-December, the envelope is postmarked December 21, 2015. *Id.* at 18. The envelope, sent via first-class mail, also contains a clear and correct address for Defendant's registered service agent, CT Corporation System ("CT"). *Id.* at 17, 18; *Ex. 1 to Pl.'s Surresponse*, ECF No. 41-1, at 7.

Despite a postmark on December 21, CT did not process the Notification Letter through its system until January 6, 2016, 16 days after that postmark date. Defendant processed this letter in its system the next day, January 7, 2016. *Id.* at 5. On the day it processed Plaintiff's letter, which

---

[2] Both parties attached to their pleadings Plaintiff's letter notifying Defendant of his retention of counsel and the accompanying envelope. *Ex. A to Def.'s Mot. for Summ. J.*, at 18-19; *Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.*, ECF No. 31-1, at 1, 3. Because citation to both attachments is unnecessary, the Court will site to one or the other, unless it is necessary to cite both.

[3] The date contained in the Notification Letter is not clear. It appears as if the Notification Letter was dated on either December 5, 2015 or December 15, 2015. In his complaint, Plaintiff asserted that the Notification Letter was dated December 5, 2015. *Compl.* ¶ 11. But in his response to Defendant's summary judgment motion, Plaintiff maintained that "there is no dispute that the letter was mailed on December 15, 2015." *Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 3. However, at this stage in the proceedings, the date contained in the body of this letter does not affect the analysis. Therefore, the Court need not resolve this fact, which is not material to the issues addressed in Defendant's Motion for Summary Judgment.

instructed that calls cease, Defendant made one last call to Plaintiff's cellphone. *Id.* at 12; *Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J.*, ECF No. 31-2, at 2. Defendant made this call roughly five hours after noting on their records that Plaintiff had requested that all calls be directed to his attorney. *Id.* at 5, 12. However, from the period of December 21, 2015 through January 7, 2016, Plaintiff received at least 33 calls from Defendant.[4] *See id.* at 11; *Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 1-2.

This series of events lead Plaintiff to file the current action before this Court. *See generally Compl.* In his complaint, Plaintiff asserted seven counts: (1) Violation of the Telephone Consumer Protection Act ("TCPA"); (2) Violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"); (3) Violation of the West Virginia Computer Crimes and Abuse Act ("WVCCAA"); (4) Violation of the Telephone Harassment Statute ("WVTHS"); (5) Common Law Negligence; (6) Intentional Infliction of Emotional Distress ("IIED"); and (7) Common Law Invasion of Privacy. Defendant contends that summary judgment in its favor is appropriate for each of these counts.

Although the parties agree on most of the facts in this case, factual disputes remain. The most important and relevant of these disputes concern Plaintiff's letter. Specifically, the parties disagree as to when CT received the Notification Letter. Plaintiff asserts that CT received the letter prior to January 6, 2016, the date on which it processed the letter. *Pl.'s Resp. to Def.'s Mot. for Summ. J.*, ECF No. 31, at 3. At the very least, Plaintiff contends that the postmark date of December 21, 2015, when compared to CT's processing date, January 6, 2016, presents a genuine

---

[4] The number of calls recorded on the parties' records do not match exactly. But there are at least 33 calls that seem to be accurately reflected on the records of both parties.

dispute of material fact suitable for a jury. Because the date of receipt is a material fact with regard to at least three of his claims, Plaintiff maintains that summary judgment would be inappropriate

Defendant, on the other hand, contends that CT received the letter on the same date it processed the letter. *Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 4. Defendant argues that Plaintiff's evidentiary showing is insufficient to establish that CT received the Notification Letter prior to January 6, 2016. *Def.'s Reply*, ECF No. 32, at 1-3. Therefore, Defendant argues that no real disputes of material fact remain. *Id.* Defendant further argues that because the parties appear to agree that Defendant placed its last call to Plaintiff on January 7, 2016, Defendant should prevail on summary judgment as a matter of law.

Based upon the evidence and pleadings submitted, the Court believes that issues of disputed material fact remain for Plaintiff's TCPA claim, one of his WVCCPA claims, and his WVCCAA claim.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those that might affect the outcome of a case, and a "genuine issue" exists when a reasonable jury could find for the nonmoving party upon the evidence presented. *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). So too, it is not the province of the Court to make determinations of credibility. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). Instead, the Court will draw any permissible inference from the underlying facts in the

light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, in order to survive summary judgment, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and, after adequate time for discovery, does not make a showing sufficient to establish that element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. "Mere speculation by the non-movant cannot create a genuine issue of material fact" to avoid summary judgment. *JKC Holding Co.*, 264 F.3d at 465.

## III. DISCUSSION

Defendant argues for summary judgment on each of Plaintiff's claims based upon Plaintiff's inability to demonstrate a genuine issue of material fact. Because Defendant has moved for summary judgment on each of Plaintiff's seven counts, the Court will address each of the counts and the parties' respective arguments, in turn.

### a. Count I: TCPA Claim

Plaintiff's first claim arises under the TCPA. That statute makes it unlawful to place "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice"

to a party's cell phone number. 47 U.S.C. § 227(b)(1)(A)(iii) (2015). The statute additionally provides a private cause of action for those who are the target of conduct violative of this prohibition. *Id*. § 227(b)(3).

Although somewhat ambiguous from the face of his complaint and subsequent pleadings, Plaintiff does not appear to dispute the fact that Defendant had consent to call him at some point in time. *Compl.* ¶ 11; *Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 3-4 (discussing that the letter served a notice of a cease and desist request). Instead, Plaintiff appears to contend that the letter revoked his consent for Defendant to contact him. *Id.* Based upon this revocation, Plaintiff claims Defendant violated the TCPA by calling him after Defendant received the Notification Letter.

The parties do not contest that Plaintiff had the ability to revoke his consent to be contacted under the TCPA. *See generally Cartrette v. Time Warner Cable, Inc.*, 157 F.Supp.3d 448, 453-55 (E.D. N.C. 2016) (finding that the plaintiff could revoke consent to contact under the TCPA even where a contractual relationship appeared to prohibit such revocation). Indeed, this Court just recently provided a lengthy analysis supporting a plaintiff's ability to revoke consent. In *Huffman v. Branch Banking & Trust Co.*, this Court examined consent revocation under the TCPA. No. 3:16-8637, 2017 WL 2177351 (S.D.W. Va. May 17, 2017). The plaintiff in *Huffman* had revoked consent with the same type of letter as Plaintiff sent in this case. *See id.* at *1-3. This Court examined both regulatory clarifications and case-law development in other circuits regarding the ability of an individual to revoke consent to call under the TCPA. *See id.* at *2-3. Ultimately, the Court found that an individual could revoke consent under the TCPA "through any reasonable means." *Id.* at *3 (citing *In re Rules & Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7965 (July 10, 2015)). As in this case, the parties in *Huffman* did not contest that the plaintiff had the ability to revoke consent. *Id.*

But, in *Huffman*, the parties did contest whether the means taken by the plaintiff in that case were effective. CT was the service agent for the defendant in *Huffman*. *Id.* The defendant had argued that that receipt of a consent revocation letter by CT could "not bind the knowledge of revocation to" the defendant. *Id.* After citing West Virginia Code, the Court concluded that "sending notice to a corporation's registered agent clearly meets the reasonable means standard" for revocation of consent. *Id.* Additionally, the Court found that a notice sent to a registered agent that provided adequate cease and desist notice under the WVCCPA would also effectively revoke consent under the TCPA. *Id.* at *3-4. The Court reiterates the legal analysis conducted in *Huffman*, and incorporates it here. *See id.* at *2-4.

Based upon *Huffman*, Plaintiff's letter in this case effectively revoked consent for Defendant to contact him. The parties seemingly concede this finding, as they have disputed neither *Huffman*'s analysis, nor its legal effect. *See generally Def.'s Surreply*, ECF No. 43; *Pl.'s Surresponse*, ECF No. 41. Instead, the parties' contentions, in this case, revolve around the factual circumstances surrounding the revocation of consent. As noted above, the parties disagree about when CT actually received the Notification Letter.

Indeed, Defendant vies for summary judgment upon the receipt date of the notice revoking consent. *Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 5-6. Defendant claims that Plaintiff only revoked consent upon the Defendant's receipt of the Notification Letter. *Id.* Defendant believes that undisputable facts demonstrate that CT received the Notification Letter on January 6, 2016 and Defendant actually received it on January 7, 2016. *Id.* at 2-3. Defendant's last call took place on the same day it actually received the Notification Letter. *Id.* at 6. Under its view of the circumstances, Defendant did not place a call after Plaintiff had effectively revoked consent.

Therefore, Defendant contends that it is entitled to summary judgment on this claim because as a matter of law it did not violate the TCPA.

Unfortunately, Defendant draws a false equivalency between receiving and processing. As such, Defendant fails to note the core issue of the factual dispute regarding the revocation. Without a doubt, CT processed the Notification Letter on January 6, and Defendant actually received that letter the next day. Even Plaintiff concedes as much. *Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 3. But, the pertinent question—and consequential fact—is when did CT *receive* that letter. *See Huffman*, 2017 WL 2177351, at *4 (finding that "CT's alleged receipt of the letter serves as reasonable means to revoke consent" under the TCPA). Although the evidence suggests that CT generally processes letters on the same day as it receives them, this is by no means a certainty, especially in light of the factual circumstances and procedural posture of this case. *See Ex. 1 to Pl.'s Surresponse*, ECF No. 41-1, at 6 (arguing that as a matter of practice CT's subcontractor generally processes mail within twenty-four hours of receiving it). In fact, an agent of CT testified that CT does not stamp a receipt date upon the arrival of mail. *Id.* Therefore, the date of receipt is not undisputed as Defendant claims.

At the furthest point of reduction, the Court must decide whether it indisputably took 16 days for the USPS to deliver a letter thirteen miles. *Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 3. In doing so, the Court must compare regular courses of business practice and decide which one was more "regular" in this particular instant. CT regularly processed letters on the day of receipt, suggesting that the Notification Letter reached CT on January 6, 2016. However, the USPS regularly delivers letters sent by First-Class Mail in one to three business days, suggesting that the Notification Letter reached CT on December 24, 2015, at the latest. *Ex. 7 to Pl.'s Surresponse*, ECF No. 41-6, at 1. This is a discrepancy of over ten days in the expected receipt date. To decide

the issue, the Court would have attribute this discrepancy to the actions of either CT or USPS. If the delay was caused by an unusual error in the delivery of the mail by the USPS, then the Court would likely find January 6, the date of process, to constitute the date of the letter's delivery, and thus the date of consent revocation. However, if the USPS had delivered the letter in the usual course of delivery, and due CT's mistake, CT did not process the letter until January 6, then the Court would likely find that Defendant was constructively notified of Plaintiff's consent revocation prior to January 6. At the summary judgment stage, these types of questions constitute genuine issues of material fact. This determination befits the consideration of a jury, not the Court.

Despite Defendant's refrain, Plaintiff has presented sufficient evidence to survive summary judgment. The most important concrete evidence is the postmarked envelope of the Notification Letter. As demonstrated from the postmark, the USPS received the Notification Letter on December 21, 2015. *Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.*, ECF No. 31-1, at 3. Additionally, the envelope reflected the correct address for the intended arrival point, CT's office in Charleston.

These two concrete facts, the postmarked date and the correctly addressed envelope, give rise to a rebuttable presumption of timely delivery.[5] Under the traditional common law mailbox

---

[5] *See Dunn v. Watson*, 566 S.E.2d 305, 308 (W. Va. 2002) (explaining the presumption created by the mailbox rule, the rationale for its implementation, and the application of the rebuttable presumption); *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1137 (4th Cir. 1984) (providing that a properly addressed piece of mail is presumed to be delivered "in the regular course of mail delivery," but noting that the presumption is stronger when sent by certified mail) (citations omitted); *Me. Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir. 2012) (explaining the common law mailbox rule "'help[s] courts determine when the pertinent document was physically delivered,' allowing for the presumption that 'physical delivery occurred *in the ordinary time after mailing*.'" (emphasis original)); *Phila. Marine Trade Ass'n v. Comm'r of IRS*, 523 F.3d 140, 147, 149-51 (3d. Cir. 2008) (generally discussing and applying the common law mailbox rule and providing that when "a document is properly mailed, the court will presume the United States Postal Service delivered the document to the addressee in the usual time" (citations omitted)); *Kerr v. McDonald's Corp.* 427 F.3d 947, 951-52 (11th Cir. 2005) (affirming a grant of summary

rule, a correctly addressed letter placed into the mailing system is presumed to arrive at its delivery point in the usual time. *See, e.g., Phila Marine Trade Ass'n*, 523 F.3d at 147. Because Plaintiff has demonstrated (1) proper addressing and (2) placement into the USPS system on December 21, the Court finds that Plaintiff has entitled himself to the presumption of timely delivery.

Yet, Defendant has presented evidence that contests this rebuttable presumption. Defendant has put forth that, as a common practice, CT processes letters within twenty-four hours of receiving them. In this case, CT processed the Notification Letter on January 6, 2016. So too, Defendant has provided evidence that delays in the mailing, due to the USPS, have occurred in CT's experience. *Ex. A to Def.'s Surreply*, ECF No. 43-1, at 2; *see also Ex. 6 to Pl.'s Surresponse*, ECF No. 41-5, at 11-12. Together, these showings rebut the presumption of usual timely delivery.

However, the mere rebuttal of a presumption cannot support the foundation upon which summary judgment may be granted. *See Phila. Marine Trade Ass'n*, 523 F.3d at 153 (reversing a district court's granting of summary judgment because the district court failed to apply the mailbox rule that created a genuine issue of material fact as to a date of receipt); *Kerr*, 427 F.3d at 951 (finding that summary judgment would be improper based upon a factual dispute that evoked the mailbox rule presumption, but affirming the grant of summary judgment for a different reason); *U.S. ex rel. Westmoreland v. Amgen, Inc.*, 812 F.Supp.2d 39, 80 (D. Mass. 2011) ("[E]ven if her evidentiary presentation could be viewed as demonstrative of non-receipt, this would simply raise a question of fact, not warrant summary judgment."). In order to reach a definitive conclusion

---

judgment upon different grounds, but considering a dispute as to when letters were received and applying the presumption that mail is delivered in normal course); *Punzalan v. F.D.I.C.*, 633 F.Supp.2d 406, 413 (W.D. Tex. 2009) ("'[P]roof that a letter properly directed was placed in a U.S. Post Office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed.'" (citations omitted)); *see also Nat'l Grange Mut. Ins. Co. v. Wyoming Cty. Ins. Agency, Inc.*, 195 S.E.2d 151, 154-55 (W. Va. 1973) (recognizing the rebuttable presumption under the common law mailbox rule).

regarding the date of receipt, the Court would have to judge the credibility of testimony, and weigh the evidence. This, however, is inappropriate on the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 249; *Gray*, 925 F.2d at 95. Therefore, the Court finds that the parties have demonstrated a genuine dispute regarding an issue of material fact.[6] This is the province of the jury, not the Court.[7]

For this reason, Plaintiff's TCPA claim survives summary judgment.

### b. Count II: WVCCPA Claims

Count II of Plaintiff's Complaint alleges violations of the WVCCPA. The WVCCPA is a comprehensive consumer protection code that provides private causes of action for aggrieved debtors against debt collectors. *See Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495, 500-01 (S.D.W. Va. 2014) (citation omitted). As a general matter, the Supreme Court of Appeals

---

[6] In its prior Memorandum Opinion and Order, which held in abeyance Defendant's Motion for Summary Judgment, the Court instructed that Plaintiff's "mere speculation about when his letter may have been received is not sufficient to defeat summary judgment." *Mem. Op. and Order*, ECF No. 35, at 3. This "mere speculation" did not encapsulate Plaintiff's broader argument that the Notification Letter arrived prior to the January 6, 2016 CT processing date. Instead, the "mere speculation" referred only to "Plaintiff['s] speculat[ion] that his letter likely was received by December 22, and alleg[ing] that Defendant called him at least 27 times between December 22 and January 7." *Id.* at 2. Indeed, if Plaintiff argued that Defendant received the letter specifically on December 22, the day after the postmark, then the Court would likely reach a different conclusion from the one reached in this Order. Instead, Plaintiff has argued that the letter should have arrived within a range of time significantly before the January 6, 2016 processing date. *Pl.'s Surresponse*, at 17-18. This argument, coupled with the concrete evidence of the postmarked envelope and the presumption of timely delivery discussed above, surpasses "mere speculation." This buttressed argument meaningfully differs from simply guessing that the USPS delivered the Notification Letter the day after it was postmarked. Therefore, the Court stands by both its previous instruction and its finding in this Order that Plaintiff has produced sufficient evidence to demonstrate a genuine issue of the material fact about the date of delivery.

[7] Frankly, all too often has the Court seen issues concerning the receipt of this type of letter. Conscious of the changes in the WVCCPA, the Court is hopeful that disputes over when a letter was received, or if it was received at all, will dissipate. It is vexing that these fairly simple and direct letters should, time and again, present issues that do not seem to occur regularly with regard to almost any other type of mailed document.

of West Virginia has instructed that courts applying the WVCCPA should construe the statute broadly and liberally. *See id.* (citing *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995)). To that end, when considering the WVCCPA, courts should give effect to the purposes intended by the legislature. *Id.* at 501.

Plaintiff asserts three different claims under the WVCCPA: (1) one under 46A-2-125(d); (2) one under 46A-2-127(a) &(c); and (3) one under 46A-2-128(e). *See Compl.* ¶ 26; *Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 6. Defendant has moved for summary judgment on each of Plaintiff's three WVCCPA claims. The Court will address each statutory claim one at a time.

The first of Plaintiff's WVCCPA claims alleges a violation of section 46A-2-125. That section prohibits debt collectors from "unreasonably oppress[ing] or abus[ing] any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another." W. Va. Code § 46A-2-125. Subsection (d) of the provision, upon which Plaintiff bases his claim, establishes a standard for determining whether conduct was "unreasonably oppressive and abusive." The standard provides that a debt collector violates the prohibition if it calls

> [(1)] any person more than thirty time per week or engag[es] any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, [(2)] with intent to annoy, abuse, oppress or threaten any person at the called number.

W. Va. Code § 46A-2-125(d). This standard contains two prongs; the first prong establishes a threshold for the quality or nature of violative conduct (the "threshold element"), and the second prong describes the intent behind the conduct (the "intent element"). *See Huffman*, 2017 WL 2177351, at *4 (describing that under the amendment to the statute, the initial threshold determination must be made before the jury can consider the intent element). In order to prove a

125(d) violation, Plaintiff must demonstrate both the (1) threshold element and (2) the intent element. Plaintiff must demonstrate the required call threshold before he would be permitted to continue with his claim. *Id*. at *4-5.

In this case, the record is devoid of evidentiary support to demonstrate that Plaintiff can meet the threshold element. Although both parties attached their respective call logs to their pleadings, neither of these call logs show that Defendant violated the threshold element. *See. Ex. A to Def.'s Mot. for Summ. J.*, at 9-15; *Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 1-2. The call logs neither show that Defendant made the required number of calls, nor the timing of calls, necessary to satisfy the threshold element of 125(d). *See Huffman*, 2017 WL 2177351, at *5 (applying the threshold element and reaching the same finding). Therefore, Plaintiff's WVCCPA claim under subsection 125(d) fails.

Next, Plaintiff makes a claim under section 46A-2-128(e). That section prohibits "[a]ny communication with a consumer more than seventy-two hours after the debt collector receives written notice, either on paper or electronically, from the consumer or his or her attorney that the consumer is represented by an attorney." W. Va. Code § 46A-2-128(e) (2015)[8]. The consumer must include certain particulars in the notice and send it "to the debt collector's registered agent, identified by the debt collector at the office of the West Virginia Secretary of State." *Id.*

As with the TCPA claim, Defendant contends that Plaintiff's 128(e) claim must fail due to the receipt date of the Notification Letter. *Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 6-7. Again, Defendant contends that it did not receive the Notification Letter until January 6, 2016. *Id.* at 7. Because Defendant's last call to Plaintiff took place on the next day, January 7, 2016, Defendant

---

[8] Note that this version of the code was effective from June 12, 2015 until July 3, 2017. On July 4, 2017, a new version of this code became effective that provided that the written notice must be delivered via certified mail. *See* W. Va. Code § 46A-2-128(e) (2017).

argues that, as a matter of law, Plaintiff cannot prove a violation of 128(e). Although Defendant correctly notes the similarity of analysis between this claim and the TCPA claim, the Court refuses to adopt Defendant's definitive view of the facts.

In the paragraphs above, this Court has already explained that there is a genuine issue of material fact regarding the date on which CT, as Defendant's binding registered agent, received the Notification Letter. If Defendant is correct that CT received the letter on January 6, 2016, then it would prevail on this claim. However, if CT received the letter prior to January 6, 2015, then Defendant may have placed multiple calls in violation of 128(e). As previously noted, the Court believes that a reasonable jury could reach either conclusion regarding the date of receipt for the Notification Letter. *See supra* p. 8-11. Because the receipt date of the Notification Letter could be determinative of Plaintiff's 128(e) claim, this claim survives summary judgment.

Plaintiff's final WVCCPA claims arises under sections 46A-2-127(a) & (c). Section 127 generally prohibits the use of "any fraudulent, deceptive or misleading representation or means" in the collection efforts. The code includes examples of conduct that the legislature has deemed a violation of section 127. Relevant to Plaintiff's claims, subsections (a) and (c) both regulate debt collectors' disclosure of their true business identities. Under subsection (a), a debt collector may not use "any business, company or organization name while engaged in the collection of claims, other than the true name of the debt collector's business, company or organization." W. Va. Code § 46A-2-127(a). Similarly, subsection (c) establishes that "the failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed" constitutes a violation of section 127. *Id* § 46A-2-127(c). In order to survive summary judgment on his claims under section 127, Plaintiff must present some concrete evidence upon which a reasonable jury could find that Defendant violated the section.

Despite a full period of discovery, Plaintiff has failed to make the necessary showing to rebuff Defendant's summary judgment motion on the section 127 claim. Defendant correctly asserts that Plaintiff has not presented any evidence showing that it failed to disclose, or misrepresented, its identity in the calls to Plaintiff. *See Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 7-8. In his response to Defendant's motion for summary judgment, Plaintiff did not so much as mention his claims under section 127. Indeed, Plaintiff did not discuss the substance of any of Defendant's phone calls. Without even the most cursory assertion of what Defendant's representatives said in the calls, Plaintiff can hardly demonstrate that Defendant failed to identify itself correctly during those calls. Therefore, Plaintiff's claims under section 127 fail.

### c. Count III: WVCCAA Claims

Related to his claims under the WVCCPA, Plaintiff also asserts claims under the WVCCAA. Unlike its similarly abbreviated sister statute, the WVCCAA is a criminal statute. Under the WVCCAA,

> [i]t is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to . . . [m]ake contact with a person after being requested by the person to desist from contacting them[.]"

W. Va. Code § 61-3C-14a(a)(2). Clearly recognizing the overlap with the WVCCPA's civilly enforceable prohibitions, the West Virginia Legislature dictated the relationship between the WVCCPA and the WVCCAA. The criminal prohibition against unwanted contact includes the proviso "[t]hat a communication made by a lender or debt collector to a consumer, regarding an overdue debt of the consumer that does not violate chapter fort-six-a of this code [, the WVCCPA], does not violate this subsection." *Id.*

Although a criminal statute, the WVCCAA provides for a private cause of action to those injured by a violation of its prohibitions. W. Va. Code § 61-3C-16(a). Furthermore, the statute provides that it "shall not be construed to limit any person's right to pursue any additional civil remedy otherwise allowed by law." *Id.* § 61-3C-16(c). Additionally, Plaintiff does not need to establish that Defendant has been criminally convicted under the WVCCAA in order to pursue a civil claim under it. *Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, 97 F.Supp.3d 827, 833-34 (S.D.W. Va. 2015).

Defendant argues for summary judgment based upon Plaintiff's dearth of evidentiary support for his claim. Specifically, Defendant contends that Plaintiff's WVCCAA claim hinges upon "the premise that [Defendant] violated West Virginia law by making calls after the cease and desist." *Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 8. And because that "factual premise fails," in Defendant's view, Plaintiff's WVCCAA claim should fail as well. *Id.* As illustrated in the prior pages, the Court does not believe that the relevant "factual premise fails."

Indeed, the Court has determined that whether or not Defendant made calls after receiving the Notification Letter is a genuine issue of material fact. Where the parties dispute the material facts, summary judgment is inappropriate. Therefore, the Court will permit Plaintiff's WVCCAA claim to continue.

### d.  Count IV: WVTHS Claim

Plaintiff has additionally brought a claim under a different criminal statute, the WVTHS. The WVTHS makes it unlawful to "[m]ake or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number." W. Va. Code § 61-8-16(a)(3). Unlike the WVCCAA, however, this criminal provision does not create a private cause of action. *Carroll v. USAA Savings Bank*, No. 3:16-11120, 2017 WL 811491, at *2 (S.D.W. Va.

Mar. 1, 2017) (Chambers, J.) (citing *Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, 97 F.Supp.3d 827, 832-33 (S.D.W. Va. 2015)). The lack of private enforceability of the WVTHS is, in part, due to the legislature's election to create the WVCCPA to cover civil actions concerning debt collector calling practices. *Snuffer*, 97 F.Supp.3d at 832-33. Obviously, as evidenced by his multiple claims under the WVCCPA, Plaintiff is fully aware of the protections accorded to him by West Virginia Code.

Potentially recognizing this clear jurisprudence, the WVTHS does not appear in any of Plaintiff's responsive pleadings to Defendant's Motion for Summary Judgment. Plaintiff has apparently abandoned any WVTHS claim in response to Defendant's motion for summary judgment. *See Pittman v. Wakefield & Assocs., Inc.*, No. 16-cv-2695-RBJ-KMT, 2017 WL 5593287, at *5 (D. Colo. Nov. 21, 2017) (citations omitted) (finding that by failing to respond, a party conceded summary judgment on those claims).

However, even without his abandonment of a WVTHS claim, the jurisprudence of this District dictates that Plaintiff's WVTHS claim must fail. For that reason, it does fail.

### e.  Count V: Negligence Claim

Plaintiff also asserts a series of common law claims. The first of these claims alleges that negligent supervision by Defendant proximately caused harm to Plaintiff. *Compl.* ⁋ 40-41.[9] From Plaintiff's somewhat opaque briefing, he apparently contends that Defendant's negligent

---

[9] In his Surresponse, Plaintiff appears to move the Court to provide the parties with "additional time to explore" the "themes" identified in the supplementary depositions, and to "eliminate as many outstanding questions of facts as can be easily resolved." *Pl.'s Surresponse*, at 8-9. The Court has already provided Plaintiff with one additional period for discovery. *Mem. Op. and Order*, ECF No. 35. Plaintiff has had not only the normal discovery period, but also this additional period to develop his evidentiary record. To the extent that Plaintiff makes a motion within the body of his Surresponse, the Court **DENIES** that motion based upon the ample time afforded to Plaintiff for discovery.

supervision of its service agents lead to the alleged statutory violations discussed above. In essence, Plaintiff believes that if Defendant had not negligently supervised or trained the agents, then the agents would have had a more effective system for recording letters like the Notification Letter. And if the agents had a more effective system, then Plaintiff would not have suffered the annoyance and harm caused by the calls. As reflected by this attenuated chain of logical predicates, Plaintiff stretches his argument too thin. In spite of the lengthy discussion in his Surresponse, Plaintiff's argumentative chain for this negligence claim fails under the weight of his evidentiary burden at this stage.

Axiomatic is it to say that a party must show duty, breach, causation, and damages to establish a claim of negligence. But within the context of a negligent supervision or training claim, a party must show more. "Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately cause injury to another." *Biser v. Mfrs. & Traders Tr. Co.*, 211 F.Supp.3d 845, 856 (S.D.W. Va. 2016) (Berger, J.) (citing *Ferrell v. Santander Consumer USA, Inc.*, 859 F.Supp.2d 812, 817-18 (S.D.W. Va. 2012)). However, the Plaintiff must identify an underlying negligent act of an employee/agent. *See Carroll*, 2017 WL 811491, at *3. Only then may a Plaintiff seek to establish that the employer/principal negligently supervised or trained. *See Biser*, 211 F.Supp.3d at 856 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)). A negligent supervision or training claim may not be based upon an underlying intentional act. *See Bourne*, 998 F.Supp.2d at 506 ("When an employer negligently fails to supervise an employee, but such negligence does not result in a negligent act on the part of the employee that harms another, the failure to supervise did not proximately result in damages."); *Heslep v. Ams. for African Adoption*, 890 F.Supp.2d 671, 687 (N.D.W. Va. 2012) (finding allegations of

intentional fraud not enough to plead underlying negligence); *Selders v. MegaCorp Logistics LLC*, No. 2:14-cv-60, 2014 WL 12638026, at *1 (N.D.W. Va. Dec. 22, 2014) (dismissing a negligent supervision claim when the underlying acts were intentional).

Upon the background of this law, Defendant contends that Plaintiff's negligent supervision claim should fail because he fails to allege and demonstrate the elements of negligence with regard to any employee. *Def.'s Mem. in Supp. of Mot. for Summ. J.*, at 9. The Court agrees.

Although he has spent a considerable amount of his pleadings attempting to demonstrate Defendant's negligent supervision, Plaintiff has failed to demonstrate the underlying negligence of the employee/agent. Plaintiff bases his only apparent allegation of an employee/agent's error upon the processing the Notification Letter. *Pl.'s Surresponse*, at 14, 18-20. Plaintiff contends that negligence caused the Notification Letter to not be processed until January 6, 2016. But Plaintiff has produced no evidence to suggest that Defendant's agent breached any duty.

Plaintiff attached to his Surresponse a portion of the deposition of Diana Stamper, the agent who actually processed the Notification Letter. Plaintiff cites to various parts of that deposition in which Ms. Stamper explained the usual practice for processing letters like the Notification Letter. *See generally id.* However, Plaintiff has not provided any evidence that Ms. Stamper's practice breached a duty of care. Plaintiff, for certain, has made suggestions of ways he would change the system. But these suggestions do not satisfy the evidentiary burden Plaintiff bares at the summary judgment stage.

Based upon Plaintiff's paltry showing regarding the underlying employee/agent negligence, the Court finds that Plaintiff has not made a showing sufficient to establish the necessary elements of a negligent supervision/training claim. Simply put, a reasonable juror could

not return a verdict for Plaintiff on his claim of negligence. Therefore, Plaintiff's negligence claim fails.

### f. Count VI: Intentional Infliction of Emotional Distress Claim

Plaintiff's penultimate count alleges a claim of IIED.[10] In order to maintain such a claim Plaintiff must satisfy four elements:

> (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs. Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998) (quoting *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 392 (W. Va. 1994)).

Plaintiff may only continue with his IIED claim if he shows that Defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at 426 (quoting *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E.2d 149, 156-57 (W. Va. 1995)). This first element presents a high bar for a plaintiff to clear. *Bourne*, 998 F.Supp.2d at 507. A litigant cannot succeed upon an IIED claim by merely asserting conduct that was "annoying, harmful of one's rights or expectations, uncivil, [or] mean-spirited." *Courtney v. Courtney*, 413 S.E.2d 418, 423 (W. Va. 1991). For the claim to survive there must be a genuine issue as to whether the conduct can "be regarded as atrocious, and utterly intolerable in a civilized community." *Travis*, 504 S.E.2d at 425. Whether Defendant's conduct, in this case, may reasonably be

---

[10] West Virginia courts have also synonymously referred to this claim as "the tort of outrage." *See Travis v. Alcon Labs. Inc.*, 504 S.E.2d 419, 424 (W. Va. 1998).

considered outrageous is a question of law. *Id.* at 427. With that legal question posed, the Court answers in the negative.

Plaintiff essentially bases his IIED claim upon the same conduct he based a majority of his other claims: Defendant called him in violation of the law, after he had sent a letter instructing the calls to stop. *Compl.* ¶ 43. Beyond mere allegations, Plaintiff's IIED claim must survive solely upon the record presented to the Court if it is to survive at all. In this case, the Court finds the record lacking. The Court agrees with the Defendant that Plaintiff has failed to submit evidence to support his IIED claim.

Without a doubt, repeated calls occurring after the receipt of a cease and desist letter may have annoyed Plaintiff. This course of activity may have even violated Plaintiff's rights and expectations under the law. However, they do not give rise to activity so heinous that a civilized community could find it "atrocious [] and utterly intolerable." *Courtney*, 413 S.E.2d at 423; *see also Travis*, 504 S.E.2d at 425. Based upon the insufficient evidentiary showing, the Court finds that a reasonable person could not find Defendant's conduct outrageous.[11] As such, Plaintiff's IIED claim fails.

### g. Count VII: Common Law Invasion of Privacy Claim

In his final count, Plaintiff asserts that Defendant violated his common law right to privacy. Plaintiff claims that he had a reasonable expectation of privacy to be free from harassing and annoying telephone calls. *Compl.* ¶ 47. Sewing a common thread of argument through the

---

[11] The Court wishes to clarify the effect of this finding. This finding does not stand for the proposition that repeated calls of a debt collector will never support an IIED claim. There may instances where the evidence produced supports the conclusion that repetitious calls to an alleged debtor, or facts similar to those alleged in Plaintiff's complaint, are sufficiently outrageous to maintain an IIED claim. *See Baldwin v. Wells Fargo Fin. Nat'l Bank*, No. 3:16-4841, 2017 WL 63026, at *3 (S.D.W. Va. Jan 5, 2017) (Chambers, J.). However, in this instance, Plaintiff has failed to make that showing.

summary judgment considerations, Defendant again claims Plaintiff has failed to produce sufficient evidence for this claim to continue. On this contention, the Court agrees again with Defendant.

West Virginia courts recognize an individual's right to privacy. *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 84 (W. Va. 1983). An invasion of this privacy right includes conduct that "unreasonabl[y] intru[des] upon the seclusion of another." *Id.* at 85. A party has committed the tort of invasion of privacy when he or she "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," but only "if the intrusion would be highly offensive to a reasonable person." *Harbolt v. Steel West Virginia, Inc.*, 640 F.Supp.2d 803, 817 (S.D.W. Va. 2009) (citing RESTATEMENT (SECOND) OF TORTS § 652B).

Under West Virginia's construction of an invasion of privacy claim, harassing phone calls can substantiate such a claim. *See Imagine Medispa, LLC v. Transformations, Inc.*, 999 F.Supp.2d 873, 886 (S.D.W. Va. 2014) (Copenhaver, J.); *Huffman*, 2017 WL 2177351, at *7 (citing *Carroll*, 2017 WL 811491, at *4). Courts in this state follow the Restatement (Second) of Torts, which recognizes that repeated and persistent phone calls can support an invasion of privacy claim. *Id*. But in order to advance beyond a motion for summary judgment, Plaintiff must submit "citations to the record and proof of damages." *Biser*, 211 F.Supp.3d at 857 (internal quotation marks omitted). Plaintiff has failed in this respect.

Although Plaintiff has produced evidence of roughly thirty calls placed by Defendant over more than two weeks, this demonstration falls short of supporting an invasion of privacy claim on summary judgment. Further, Plaintiff has not produced evidence that any of these calls occurred

at inappropriate hours,[12] or took place within a sufficiently compressed timeframe. *See Huffman*, 2017 WL 2177351, at *8 (citing *Adams v. Chrysler Fin. Co., LLC*, No. 5:11-CV-914, 2013 WL 1385407, at *9 (S.D.W. Va. Apr. 3, 2013) and *Ferrell v. Santander Consumer USA, Inc.*, 859 F.Supp.2d 812, 819 (S.D.W. Va. 2012)) (finding that 44 calls, multiple times a day, was not sufficient to maintain an invasion of privacy claim). Further, Plaintiff's showing of calls could not be highly offensive to the reasonable person. Therefore, finding no genuine dispute of material fact, the Court finds that Defendant is entitled to summary judgment on this claim.

## IV. CONCLUSION

For the reasons already explained, the Court **DENIES** Defendant's Motion for Summary Judgment with regard to Count I; claim under Section 46A-2-128 of the WVCCPA in Count II; and Count III. The Court **GRANTS** Defendant's Motion for Summary Judgment on, and **DISMISSES**, Plaintiff's claims under Sections 46A-2-125 and 46A-2-127 of the WVCCPA in Count II; Count IV; Count V; Count VI; and Count VII.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:  January 2, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[12] The WVCCPA has a statutorily provided timeframe for calls considered to be placed at convenient times. Section 46A-2-125(d) specifies that calls made from 8:00am until 9:00pm are assumed to be conveniently timed. None of the calls on Plaintiff's call-log fall outside of this timeframe.